UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>D. L. RUNNELS; et al.,<br><br>    Defendants.<br>_____ / | No. C 07-2303 MHP (pr)<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT MARTINELLI** |

## INTRODUCTION

Francisco Gonzalez, a prisoner at the Pelican Bay State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983, alleging several claims of deliberate indifference to his serious medical needs. Although there are several defendants and several different medical problems, this order addresses only the claim against defendant Dr. Thomas Martinelli. Dr. Martinelli has moved for summary judgment and plaintiff has opposed the motion. For the reasons discussed herein, the court will grant the motion.

## BACKGROUND

Gonzalez is an inmate at Pelican Bay State Prison who has chronic gastro-intestinal problems. Over the years, there has been disagreement among various doctors as to what exactly is wrong with him as well as the appropriate course of care. Gonzalez alleged in his second amended complaint that Dr. Martinelli (a) failed to implement recommendations by hospital doctors when they discharged Gonzalez, and (2) gave him a medicine to which he was allergic and failed to treat the resulting welts.

The following facts are undisputed unless otherwise noted:

The incidents complained of occurred in late August 2007.

At the time, Thomas Martinelli, M.D. had worked at Pelican Bay for less than a year, with a maximum of six days per month. He also was in private practice and had contracted to perform colonoscopies for Pelican Bay at Sutter Coast Hospital for about eight years.

Gonzalez had an esophagogastroduodenoscopy ("EGD") and colonoscopy on September 19, 2006 at Sutter Coast Hospital. The operative report for that day listed a preoperative diagnosis of chronic diarrhea and chronic nausea with a history of Clostridium difficile. Clostridium difficile can cause symptoms ranging from diarrhea to life-threatening conditions of the colon. The operative report listed several postoperative diagnoses: bile reflux and gastritis, duodenitis, external hemorrhoids, diverticulosis, and multiple colonic lesions. The pathology report stated: "The colon lesions appear to show active colitis which is nonspecific. Differential diagnosis includes self-limited acute colitis with eosinophilia versus inflammatory bowel disease which seems less likely." Kessler Decl., Exh. B, 9/19/06 surgical pathology report, p. 1.

Gonzalez was taken from the prison to Sutter Coast Hospital on August 23, 2007 with complaints of abdominal pain, nausea, vomiting, fatigue, headache, and weight loss over the past month. He was discharged back to the prison on August 25, 2007. The discharge summary written by Dr. Schommer stated that during his brief hospitalization, Gonzalez had received a CT scan and x-rays; initially had been put on IV fluids but his diet was gradually advanced to the point he was able to eat without nausea or vomiting; initially had been constipated but eventually had bowel movements without difficulty; and had laboratory tests that were essentially within normal limits except for eosinophilia noted on his white blood cell differential as well as low total protein and low albumin. Dr. Schommer's discharge summary stated the following about his release:

> ASSESSMENT AND PLAN: The patient is being discharged back to the prison at this time in improved condition. Given that he does not have any definite evidence [of] ulcerative colitis, and on the contrary seems to [have] had, in the past, perhaps an eosinophilic colitis and now continues to have eosinophilia, I would recommend that he be seen by an allergist. In addition, I would recommend that he have an outpatient

2

> EGD and colonoscopy to followup on his active colitis that was most likely self limited a year ago. We are recommending that the patient not be given prednisone and Asacol given that he has no definite diagnosis of ulcerative colitis. The patient also states that he does not take his Remeron and does not need it.
>
> DIET: We are recommending a diet high in protein with Ensure supplements given the protein calorie malnutrition.
>
> MEDICATIONS: We are recommending increasing the Pepto-Bismol tablets to 2 p.o. q.i.d. We are recommending adding Nexium 20 mg p.o. daily, Metamucil or generic psyllium one dose daily with 8 ounces of water or juice, and ibuprofen mg. p.o. t.i.d. after meals. The ibuprofen may perhaps help as an antiinflammatory with the eosinophilia until the patient is able to be evaluated by an allergist.

Kessler Decl., Exh. B, 8/25/07 discharge summary, p. 2.

There is no evidence that the hospital doctors or any health care provider perceived the need for the EGD and colonoscopy to be an emergency in August 2007.

During the period August 27 through August 31, 2007, Dr. Martinelli was an attending physician in the Pelican Bay infirmary. Prisoners are put in the infirmary when they are too ill to be in their regular housing, but not so sick that they require hospitalization. Dr. Martinelli stated that, if an inmate returned from a speciality clinic or inpatient stay with specific recommendations for follow-up care, evaluations, medicines, or studies, those recommendations would be evaluated and acted upon by the Primary Care Provider for the unit where the inmate was housed, and not by the infirmary doctor.

On August 27, 2007, Gonzalez went to the infirmary and saw Dr. Martinelli with complaints of chronic abdominal pain. Gonzalez's vital signs included a temperature of 99 degrees. Dr. Martinelli's assessment was that Gonzalez had abdominal pain of unknown etiology and his plan was to add Reglan ac at bedtime and to observe Gonzalez. (Reglan is the brand name of a medicine used for heartburn.)

On August 28, Dr. Martinelli continued to observe Gonzalez due to the complaints of nausea, vomiting and abdominal pain. Gonzalez was taking Reglan and Prilosec. Gonzalez's temperature rose to 100.8 degrees. Dr. Martinelli noted that Gonzalez's abdominal pain had improved but he had a fever of unknown origin. Dr. Martinelli planned to observe Gonzalez, and to order a urinalysis and chest x-ray.

On August 29, Dr. Martinelli noted that Gonzalez's temperature was down to 99.8

degrees, and that the blood counts, urinalysis and x-rays were unremarkable. Dr. Martinelli noted that Gonzalez had a mild rash and mild myalgia (i.e., muscle pains) starting that day, and that his abdomen and nausea were better. Gonzalez was taking Reglan, Prilosec and Rocephin, an antibiotic. Dr. Martinelli assessed Gonzalez as possibly having a viral infection. He planned to observe him, continue fluids and antibiotics, and to check his blood count in the morning.

The parties appear to agree that Gonzalez had an allergic reaction to Rocephin. They disagree as to his symptoms, however, with Gonzalez stating he developed welts and Dr. Martinelli observing a rash.

On August 30, Dr. Martinelli noted that Gonzalez had improved, with only mild abdominal pain and some nausea but no vomiting. Dr. Marintelli noted that no rash was observed, that the temperature was down to 99.7, and that the blood cultures had shown no growth so far, and that his white blood count was 12,900. Dr. Martinelli's assessment was chronic abdominal pain of unknown etiology, probably viral syndrome. He stopped Gonzalez's Reglan, IV fluids and Rocephin, and added phenegran as needed.

On August 31, Dr. Martinelli noted that Gonzalez's abdomen felt better and he had no nausea, but continued to have loose stools, and had a mild cough and sore throat. Gonzalez's temperature was down to 99.5 degrees. His lungs were clear, his abdomen was soft and non-tender, and his throat was unremarkable. Dr. Martinelli assessed Gonzalez as having viral syndrome, diarrhea of unknown cause, and chronic abdominal pain. He discharged Gonzalez from the infirmary with Imodium and Halls cough drops.

The undisputed expert opinion regarding Dr. Martinelli's care during his five-day stay in the infirmary was from Dr. Kessler, another internist:

> Based on my review of the records, my education, and my experience as a specialist in internal medicine, it is my opinion that Mr. Gonzalez had a fever and other symptoms which were worked up by Dr. Martinelli in the Prison dispensary in the usual fashion, including blood work, chest x-ray, and the like. Dr. Martinelli chose to administer antibiotics, and selected Rocephin, which I feel was a reasonable choice. Although Mr. Gonzalez complains that he developed "welts" in reaction to the antibiotics (Rocephin), and they were left untreated, the records reflects not "welts," but a "rash." Moreover, a drug reaction from Rocephin is self limiting once the medicine is stopped – which Dr. Martinelli did when the rash was observed. Stopping the Rocephin when

4

the rash developed was the proper treatment. When the Rocephin was stopped, Mr. Gonzalez's rash improved.

Kessler Decl., ¶ 12. He opined "that at all times Dr. Martinelli's care of Mr. Gonzalez was well within the standard of care for a specialist in internal medicine." Id. at ¶ 13.

Most of Gonzalez's grievance against Dr. Martinelli stems from the fact that, during his short stay in the infirmary, Dr. Martinelli did not implement the recommendations made by the hospital doctor when he was discharged on August 25, 2007.

The recommendation for an EGD and colonoscopy was implemented in part. Dr. Martinelli performed a colonoscopy on Gonzalez on October 12, 2007, within two months of his discharge from the hospital, and did another colonoscopy on June 27, 2008. The EGD was never performed. There is no competent evidence in the record that Dr. Martinelli played any role in the decision not to provide the EGD.

The parties agree that Dr. Martinelli did not refer Gonzalez to an allergist during his brief stay in the infirmary in August 2007.

Gonzalez states that, during his 5-day stay in the infirmary, Dr. Martinelli did not provide Ensure supplement, Nexium, ibuprofen and Metamucil recommended by Dr. Schommer when Gonzalez was discharged from the hospital. Gonzalez was given Prilosec, however. Nexium and Prilosec are different brands of proton pump inhibitors, with no appreciable difference between them. Dr. Martinelli states that he is unable to recall or determine whether any of the medicines recommended were provided to Gonzalez. For purposes of the pending motion the facts are accepted to be that Gonzalez was not provided with Ensure supplement, ibuprofen, Metamucil, or Nexium, although Gonzalez was provided with the functional equivalent of Nexium. Dr. Martinelli states, as does his expert Dr. Kessler, that either course – providing the recommended medicines or not providing the recommended medicines – would have been medically acceptable because during the five days Gonzalez was in the infirmary, the priority was to treat his more serious and pressing problems.

5

## DISCUSSION

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1976). To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994). A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.), cert. denied, 519 U.S. 1029 (1996). Where defendant doctors have chosen one course of action and a plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

Gonzalez has failed to raise a triable issue of fact on his claim that Dr. Martinelli acted with deliberate indifference to his serious medical needs. Gonzalez has failed to set forth evidence that would allow a reasonable trier of fact to conclude that the defendant physician purposefully ignored or failed to properly treat his condition.

A.   Alleged Failure To Implement Hospital Discharge Recommendations

Upon Gonzalez's discharge from the hospital, the hospital doctor recommended that a colonoscopy and EGD to be done, and for Gonzalez to be given Ensure supplement, Nexium, ibuprofen and Metamucil.

Gonzalez has presented no evidence that would allow a reasonable trier of fact to conclude that Dr. Martinelli was deliberately indifferent in not doing the colonoscopy until

two months after Gonzalez was discharged from the hospital. The evidence suggests nothing more than the routine delays attendant to scheduling medical procedures. Delay alone does not demonstrate deliberate indifference. See Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

      The EGD was not done during Gonzalez's brief stay in the infirmary or thereafter. Like the need for a colonoscopy, the need for an EGD was not an emergency. Gonzalez has not presented any evidence that it was within Dr. Martinelli's responsibility to do an EGD or schedule one during Gonzalez's five-day stay in the prison infirmary. See Estelle v. Gamble, 429 U.S. at 107 ("the question whether an X-ray–or additional diagnostic techniques or forms of treatment–is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice"). Dr. Martinelli presented evidence that the chore of the infirmary doctor is to deal with the infirmary patient's more urgent problems. Gonzalez believed that the doctor was supposed to take care of all his medical concerns during his stay at the infirmary, but his belief does not equal medical necessity. On the evidence, no reasonable trier of fact could conclude that it was medically necessary for that non-emergency procedure to be done or scheduled within a week of Gonzalez's discharge from the hospital.

      Although the fact that an EGD was not done after Gonzalez's release from the infirmary is troubling, Gonzalez has not provided evidence that Dr. Martinelli caused that problem. When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Gonzalez argues that Dr. Martinelli was his primary care provider during his stay in the prison infirmary and therefore was obliged to implement all the recommendations in the hospital discharge orders. Opposition (docket # 62), p. 2. Gonzalez has offered no evidence to support this assertion, but even if he did have such evidence, it would not make a difference because Martinelli at

7

the time chose to address Gonzalez's more serious and urgent problems of fever and abdominal pain. Gonzalez also offered no evidence that Dr. Martinelli was his primary care provider after that week in the infirmary.

Gonzalez also suggests in his opposition that Dr. Martinelli actually denied the EGD procedure, and points to the inmate appeal at his Exhibit S-7 as proof of this. He is incorrect. Dr. Martinelli did not sign the appeal, and is not even mentioned in it. The inmate appeal response stated that a colonoscopy was completed, and that the "EGD remains pending due to the surgeon's backlogged schedule." Opposition, Exh. S-7, Director's Level Appeal Decision. Even assuming that the surgeon to whom the decision refers is Dr. Martinelli, the appeal does not show a refusal to treat Gonzalez. That an inmate must, like other patients, wait for an appointment with a doctor does not mean that the doctor has refused to treat or evaluate him. Gonzalez speculates that, since Dr. Martinelli is a treating physician, he was on the prison's medical authorization committee that reviewed his case, but there is no evidence supporting that speculation. See Plaintiff's Reply (Docket # 79), p. 2.

With regard to the failure of Dr. Martinelli to implement the hospital doctor's recommendation for Nexium, no reasonable jury could conclude that Dr. Martinelli was deliberately indifferent when Gonzalez was given Nexium's functional equivalent, Prilosec.

With regard to the failure of Dr. Martinelli to implement the hospital doctor's recommendations for an Ensure supplement, ibuprofen, and Metamucil, Gonzalez has failed to present evidence that would allow a reasonable trier of fact to conclude that this amounted to deliberate indifference. The undisputed evidence shows that it was medically acceptable for the infirmary doctor to go either way – giving the routine medicines or not giving the routine medicines – while addressing the more urgent problems that caused the patient to be in the infirmary. During the five days Gonzalez was in the infirmary, Dr. Martinelli prioritized treating Gonzalez's more serious and pressing problems of a fever and chronic abdominal pain of unknown origin. Although Gonzalez believes that Dr. Martinelli should have immediately and exactly followed the hospital doctor's discharge recommendations, he has not provided any evidence that it was medically unacceptable to do otherwise. Indeed,

8

1 the kind of blind following of a previous doctor's instructions that Gonzalez wanted would
2 have taken no account of his renewed abdominal pain and fever.   That Gonzalez thinks Dr.
3 Martinelli should have approached his case a different way than he did shows at most  a
4 difference of opinion about the proper course of care for him.  To survive summary
5 judgment, Gonzalez had to come forward with evidence that would allow a reasonable jury
6 to conclude "that the course of treatment the doctor[] chose was medically unacceptable
7 under the circumstances," and that he "chose this course in conscious disregard of an
8 excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d at 332.  He did not do so.

Gonzalez also contends that Dr. Martinelli was deliberate indifferent "by providing immodium & cough drops for serious medical needs."  Opposition, p. 8.  The evidence plainly and indisputably shows that Dr. Martinelli did far more than just provide immodium and cough drops: the care provided in the infirmary included providing several medicines to address the suspected infection and abdominal problems, x-rays, blood tests, urinalysis, and observation. Gonzalez also overlooks that he got better while in the infirmary, before being discharged with immodium and cough drops.

Gonzalez takes issue with the expert's statement that it would have been appropriate to discontinue or to continue the non-essential chronic medicines.  He contends that the assertion is self-contradictory and nonsensical.  The court disagrees.  The evidence showed that the inmate was in the infirmary to deal with his urgent medical problems, not necessarily all of his problems.  Thus, the infirmary doctor could conclude that it did not matter whether the inmate was receiving his non-essential chronic medicines while the more serious problem that brought him to the infirmary was addressed. Gonzalez's disagreement simply is not enough to raise a triable issue of fact that Dr. Martinelli acted with deliberate indifference.

B. <u>The Allergic Reaction To The Antibiotic</u>

Gonzalez claims that Dr. Martinelli was deliberately indifferent to his medical needs in giving him medicine to which he was allergic and then failing to treat the resulting welts. In light of the complete absence of any evidence suggesting that Gonzalez had a known or suspected allergy to the antibiotic Rocephin, the contention that it was deliberately

1 indifferent to give that drug to Gonzalez is plainly without merit.

2 The parties disagree about whether Gonzalez developed welts or a rash as a result of
3 the allergic reaction, but that dispute does not show a triable issue of fact. The undisputed
4 evidence is that any rash would have stopped when the medication was stopped and the
5 undisputed evidence is that Dr. Martinelli discontinued the Rocephin when Gonzalez
6 developed a rash. A reasonable jury simply could not find that responding to an observed
7 allergic reaction by stopping the medicine showed deliberate indifference. Even if, as
8 Gonzalez contends, he developed welts rather than a rash, he has presented no competent
9 evidence that there was any treatment that a doctor should have provided for welts; that is,
10 there is a failure of evidence on both the objective and subjective prongs: there is no
11 evidence that welts amounted to a serious medical need and there is no evidence that there
12 was a specific treatment available for welts that Dr. Martinelli chose not to provide to
13 Gonzalez.

14 Gonzalez has not established "'a genuine issue for trial'" that defendant was
15 deliberately indifferent to his need for the EGD, colonoscopy and medicines, or that the
16 defendant was deliberately indifferent in his handling of the allergic reaction to the antibiotic.
17 See Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Defendant is entitled to
18 summary judgment in his favor on the Eighth Amendment claim.

19 The court has read and considered Gonzalez's opposition (docket # 62) to the motion,
20 as well as "plaintiff's response to re-oppose defendants' motions" (docket # 77) and
21 "plaintiff's reply in support of a demand for jury trial" (docket # 79). His numerous requests
22 for extension of time are dismissed as moot because he thereafter filed the opposition as well
23 as two extra briefs that normally are not permitted.

## CONCLUSION

25 For the foregoing reasons, defendant Martinelli's motion for summary judgment is
26 GRANTED. (Docket # 36.) Martinelli is entitled to judgment as a matter of law in his favor
27 on plaintiff's claims against him. Plaintiff's motion to oppose the motion for summary
28 judgment is DENIED. (Docket # 80.) The court will wait until the conclusion of this case to

enter a judgment so that a single judgment may be entered resolving all claims against all defendants together. The court does, however, contemplate that this order ends the involvement of defendant Martinelli in this action.

IT IS SO ORDERED.

Dated: September 25, 2009

_____
Marilyn Hall Patel
United States District Judge